# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:09-CV-122

| | |
|---|---|
| MARISSA BOND, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| REXEL, INC., and REXEL ELECTRICAL AND DATACOM | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Complaint (Doc. 8) filed January 11, 2010; Plaintiff's Memorandum in Opposition (Doc. 10) filed January 23, 2010; and Defendants' Reply (Doc. 13) filed February 2, 2010. Also before this Court is Plaintiff's Motion to Amend the Summons and Complaint (Doc. 14) filed March 24, 2010; Defendants' Response in Opposition (Doc. 16) filed April 12, 2010; and Plaintiff's Reply in Support (Doc. 17). This matter is now ripe for review.

## I. INTRODUCTION

The following facts are taken from Plaintiff's Complaint and are deemed to be true for purposes of these motions. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Plaintiff Marissa Bond ("Plaintiff") is an African American female who alleges, *inter alia*, that her employer subjected her to racial discrimination.

Plaintiff was hired as an administrative assistant by Defendant Rexel, Inc. (Doc. 1, ¶ 6) In April 2007, Plaintiff was promoted to an inside sales position with Defendant Rexel. (Doc. 1, ¶ 6) Beginning in October 2007, certain co-workers made racial slurs, jokes and remarks about

Plaintiff. (Doc. 1, ¶ 8)  Plaintiff alleges that she was treated differently from similarly situated Caucasian co-workers in the form of: (a) being yelled at for leaving early or leaving the showroom unattended; (b) not being allowed to wear jeans to work; (c) not being allowed to leave work early to go to court for a traffic ticket; (d) not receiving a bonus or commission within the expected time; (e) being written up for lateness or tardiness; (f) being asked to perform work that Plaintiff's doctor had informed Defendant Rexel she could not perform. (Doc. 1, ¶ 11)  Plaintiff further alleges that a fellow co-worker, Brian Hicks, made numerous racial remarks to Plaintiff and Plaintiff informed her supervisor of these remarks. (Doc. 1, ¶ 12)

On February 22, 2008, Plaintiff filed a charge with the EEOC alleging race discrimination. Plaintiff contends that in March 2008, Defendant Rexel: (1) enforced company policies solely against Plaintiff and not other workers; (2) prohibited Plaintiff to stay on the clock for meetings or overtime work while other employees were allowed to remain clocked-in; (3) gave Plaintiff a poor evaluation without justification for failing to work well with others; (4) gave Plaintiff thirty minute lunch breaks while allowing other employees to take one hour . (Doc. 1, ¶ 14) Plaintiff felt compelled to resign in April 2008 due to the acts of Rexel. (Doc. 1, ¶ 16) Plaintiff subsequently filed an additional charge with the EEOC on August 19, 2008 against Defendant Rexel for retaliation.

Based upon the facts alleged in her complaint, Plaintiff's Complaint states eight causes of action against Defendants. Specifically, Plaintiff's Complaint alleges causes of action for: (1) breach of employment contract; (2) Title VII of the Civil Rights Act of 1964; (3) Retaliation (under both Title VII and N.C. Gen. Stat. § 95-241); (4) intentional infliction of emotional distress or in the alternative negligent infliction of emotional distress; (5) negligent retention and supervision; (6) vicarious liability; (7) tortious interference with contract; and (8) Sarbanes-

Oxley Act/Whistleblowing and N.C. Gen. Stat. § 126-84. (Doc. 1.)

Defendants contend that dismissal of Plaintiff's Complaint against the alleged entity identified as "Rexel Electrical and Datacom" is required as said entity does not exist, and did not exist either before, during, or after the allegations contained in Plaintiff's Complaint. Defendants also urge dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Plaintiff's Title VII claims, Plaintiff's Retaliatory Employment Discrimination Act ("REDA") claim, Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress, Plaintiff's claim for negligent retention and supervision, Plaintiff's claim for vicarious liability, Plaintiff's claim for tortious interference with contract, Plaintiff's Sarbanes-Oxley claim, and Plaintiff's State whistleblower claim.

In response to Defendants' contention that Rexel Electrical and Datacom does not exist, Plaintiff filed a Motion to Amend the Summons and Complaint (Doc. 14) to substitute "Branch Group, Inc., d/b/a Rexel Electrical and Datacom," for "Rexel Electrical and Datacom."

## II. LEGAL STANDARD

### A. Motion to Amend

Federal Courts liberally grant leave to amend a civil complaint. *See* Fed. R. Civ. P. 15(a) (requiring courts to "freely give leave when justice so requires"). This Rule reflects "the federal policy in favor of resolving cases on their merits." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007). Accordingly, a motion for leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* Reasons for denying leave [to amend] include undue delay in filing the motion, bad faith or dilatory motive, repeated

failure to cure deficiencies, undue prejudice to the opposing party, and futility of the amendment. *Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Though amendment should be liberally granted, the change relates back to the original date of the pleadings only "[1] when it changes a party or the naming of a party, *see* Fed. R. Civ. P. 15(c)(3); [2] when it arises out of the same transaction as that referred to in the original complaint; *see* Fed. R. Civ. P. 15(c)(2), (3); [3] when it causes no prejudice to the new defendant in maintaining his defense, *see* Fed. R. Civ. P. 15(c)(3)(A); and [4] when the new defendant should have known that it was the party that would have been sued but for a 'mistake,' Fed. R. Civ. P. 15(c)(3)(B)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 470 (4th Cir. 2007). Furthermore, while the Rule gives reference to a "mistake," the focus in determining whether an amendment relates back is on whether the new party had notice of the action, and the effect of the amendment on the party. *Id.*

**B. Motion to Dismiss**

For the purposes of Rule 12(b)(6) motion to dismiss, the Court must construe the Complaint in the light most favorable to the Plaintiff and take the Plaintiff's well-pleaded factual allegations as true. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). However, the Court is not bound by the Plaintiff's legal conclusions, as the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the Complaint. *Id.*

The United States Supreme Court recently clarified the scope of Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), stating that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. Thus, a claim that fails to allege "enough facts to state a claim to relief that is plausible on its face" should not

survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 570; *see also Hunt v. Mortgage Elec. Registration*, 522 F. Supp. 2d 749, 752 (D.S.C. 2007) (granting defendants' motion to dismiss where the plaintiff's complaint was full of conclusory statements with insufficient factual allegations). Furthermore, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted).

### III. ANALYSIS

**A. Plaintiff's Motion to Amend the Summons and Complaint**

In her Motion to Amend Summons and Complaint, Plaintiff seeks to amend the Complaint by "adding to the caption, based upon the parties' relationships to each other," a newly identified Defendant: "Branch Group, Inc., d/b/a Rexel Electrical and Datacom." (Doc. 14 at 1.) This Court will treat Plaintiff's motion as an attempt to amend the Complaint and substitute "Branch Group, Inc., d/b/a Rexel Electrical and Datacom," for "Rexel Electrical and Datacom." Defendants argue that Plaintiff's motion should be denied, as Branch Group, Inc. has not been properly named or served, is not synonymous with "Rexel Electrical and Datacom," and Branch Group, Inc. will suffer substantial prejudice if Plaintiff's amendments are allowed.

Defendants object to Plaintiff's motion and argue that the statute of limitations has expired against any new parties and that Branch Group, Inc. would suffer substantial prejudice if Plaintiff's motion is allowed. This Court disagrees. As an initial matter, this Court notes that this is not a case in which Plaintiff seeks to amend her complaint to add new theories of recovery against Defendants who were named in the original complaint. Instead, Plaintiff seeks merely to add a defendant after Plaintiff mistakenly named an entity she thought was her employer. Of all the *Foman* factors, the only one Defendants can plausibly rely on is undue delay, but given the early stages of this litigation, it does not appear that Plaintiff's delay weighs in favor of denying

5

Plaintiff's motion to amend.

Plaintiff seeks to amend her complaint to include Branch Group, Inc. due to a misnaming of Plaintiff's employer. Thus, the first requirement of Rule 15 (c)(3) is met. *See id.* at 468 ("The word 'changing' has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of this rule."). As Plaintiff's motion only seeks to change the entity named as Plaintiff's employer, and does not change any of the factual allegations in the underlying transaction, the second requirement of Rule 15(c)(3) is similarly met. Further, Branch Group, Inc. received sufficient notice that but for the mistake in naming the incorrect party, Plaintiff would have originally brought the suit against Branch Group, Inc.. Plaintiff's complaint makes clear that she sought to sue the entity she believed was her employer. The statement of Plaintiff's employment location in her complaint provided Branch Group, Inc. with adequate notice as "[a]ny corporation maintaining reasonable business records would be able to rapidly route the complaint to the appropriate subsidiary responsible." *Goodman*, 494 F.3d at 473. Finally, because Branch Group, Inc. had at least constructive knowledge within the limitations period that Plaintiff was trying to sue her employer, Branch Group, Inc. will suffer no improper prejudice in defending the claim, as the liberal amendment policies of the Federal Rules favor relation-back. *See Goodman*, 494 F.3d at 471. It is clear that the *Foman* factors weigh in favor of allowing amendment and that the requirements articulated in Rule 15 for relating back are met. Therefore, this Court will grant Plaintiff's Motion to Amend the Summons and Complaint (Doc. 14.) to substitute "Branch Group, Inc., d/b/a Rexel Electrical and Datacom," for "Rexel Electrical and Datacom."

**B. Plaintiff's Title VII Claim**

Defendants urge dismissal of Plaintiff's Title VII claims because Plaintiff was not employed by Rexel, Inc. and Rexel Electrical and Datacom is an entity that does not exist.

Defendants point out that while Title VII prohibits racial discrimination in the workplace, a defendant will be held liable under that statute only if it is an "employer" as defined by the statute. 42 U.S.C.A. §§ 2000e-2(a), 2000e(b). In addition, there must have been an "employment relationship" between plaintiff and defendant. *Bender v. Suburban Hospital, Inc.*, 159 F.3d 186, 189 (4th Cir. 1998). Therefore, a plaintiff asserting a claim under Title VII must be a former, current or potential employee of the defendant. *Bender*, 159 F.4d at 189 n.2 (citing *Mangram v. General Motors Corp.*, 108 F.3d 61, 62 (4th Cir. 1997)) ("[T]he word [individual], as used in § 2000e-2(a), [applies only] to former, current, and potential employees.").

Defendants admit that Plaintiff was employed by Branch Group, Inc., d/b/a Rexel. (Doc. 9, at 6.) As discussed above, this Court will allow Plaintiff to amend her Summons and Complaint to reflect that Branch Group, Inc. d/b/a Rexel Electrical and Datacom is her employer. As such, Plaintiff has cured the deficiency in pleading her Title VII claim by naming her employer. Dismissal of Plaintiff's Title VII claim is therefore inappropriate at this time.

**C. Plaintiff's Claims for Retaliation under N.C. Gen. Stat. § 95-241**

In her third cause of action, Plaintiff claims that Defendants retaliated against her in violation of REDA. Prior to bringing a retaliation claim under REDA, Plaintiff is required to first exhaust her administrative remedies. Indeed, the REDA statute itself states, "[a]n employee may only bring an action under [REDA] when [she] has been issued a right-to-sue letter by the Commissioner." N.C. Gen. Stat. § 95-243(e). Further, this Court has recognized that "prior to filing a lawsuit against an employer for violation of REDA, a plaintiff must file an

7

administrative claim with the North Carolina Department of Labor. "Where it is undisputed that Plaintiffs have never filed an administrative charge with the Department of Labor, their REDA claim ... [is] barred." *Huth v. Bradman Lake Group, Ltd.*, Civil Action No. 3:08-cv-370, 2009 WL 2497993, at *6 (W.D.N.C. Aug. 14, 2009)(internal citations omitted); *see also Brackett v. SGL Carbon Corp.*, 580 S.E.2d 757, 760-61 (N.C. Ct. App. 2003) (holding the 180-day time limit for filing a REDA claim with the NCDOL is mandatory and that Plaintiff could not amend his complaint to include a claim under REDA because he did not first file the claim with the NCDOL or receive a right-to-sue letter).

Plaintiff contends that she did not need to file a discrimination claim with the North Carolina Department of Labor because North Carolina is a deferral state. Plaintiff argues that the EEOC has entered into a work sharing agreement with the Office of Administrative Hearings and North Carolina Department of Labor whereby "deferred charges" can be commenced under state law when Plaintiff files with the EEOC. In sum, Plaintiff argues that because North Carolina is a deferral state, filing a Title VII claim with the EEOC meets the administrative requirements for a state REDA claim. Plaintiff is mistaken.

North Carolina is not a deferral state with regard to private causes of action. Indeed, North Carolina is a deferral state only for certain state and governmental employees." *Shaver v. Davie Co. Pub. Schools,* Civil Action No. 1:07-cv-176, 2008 WL 943035, at *2 n.1 (M.D.N.C. April 7, 2008) (emphasis added); *see also* N.C. Gen. Stat. § 7A-759(a). Moreover, "in the overwhelming number of cases, it is accurate to describe North Carolina as a non-deferral state with a 180-day filing period." *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008). Plaintiff is not a state or government employee and therefore is not subject to any deferral agency in North Carolina, including the North Carolina Department of Labor. Thus,

8

Plaintiff has failed to meet the procedural prerequisites necessary to filing a claim under REDA. As a result, Plaintiff fails to state a REDA claim upon which relief can be granted. Therefore, Plaintiff's REDA claim is dismissed with prejudice.

**D. Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress**

Plaintiff's fourth cause of action seeks to hold Defendants liable for allegedly causing Plaintiff "severe emotional distress." Defendants argue that Plaintiff's complaint fails to state a claim upon which relief can be granted because: (1) Plaintiff's complaint contains no more than a mere recitation of the elements of intentional infliction of emotional distress ("IIED") and thus fails to adequately plead IIED; (2) Plaintiff's complaint fails to allege "extreme and outrageous" conduct as a matter of law; and (3) Plaintiff has failed to plead any allegations–factually or legally–in support of a claim for negligent infliction of emotional distress ("NIED").

In order to state a claim of intentional infliction of emotional distress under North Carolina law, a plaintiff must allege (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). Whether the conduct is extreme and outrageous is a question of law for the court to decide. *Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985). North Carolina defines this element as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986), *disc. rev. denied*, 346 S.E.2d 140 (N.C. 1986). "[T]his Court has set a high threshold for a finding that conduct meets [this] standard." *Dobson v. Harris*, 521 S.E.2d 710, 715 (N.C. Ct. App. 1999), *rev'd in part on other grounds*, 530 S.E.2d 829 (N.C.

2000). Such a standard "excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible." *Walker v. Sullair Corp.*, Nos. 90-2124, 1991 WL 195754, at *3 (4th Cir. Oct. 3, 1991).

In pleading IIED, Plaintiff states only the following: "Defendants' conduct toward Plaintiff was intentional, extreme and outrageous which in fact caused Plaintiff severe emotional distress." (Doc. 2, ¶ 43.) As the Supreme Court held in *Twombly*, with regard to surviving a motion to dismiss under 12(b)(6), "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal quotation marks and citation omitted). Plaintiff's IIED claim is precisely the sort of threadbare recital of the elements of a particular cause of action that the Supreme Court struck down in *Twombly*.

Moreover, Plaintiff's Complaint fails to allege, as a matter of law, extreme and outrageous conduct. Plaintiff's complaint alleges conduct ranging from enforcement of employment policies (e.g., not being allowed to wear jeans to work, being reprimanded for "leaving early," receiving poor evaluations) to use of racial offensive language by a colleague. None of these events amount to extreme and outrageous conduct.

Conduct such as that alleged in Plaintiff's Compliant does not rise to the level necessary to support IIED. The worst of Plaintiff's allegations – the alleged making of "monkey noises" and the use of racially offensive language – are not sufficient to impose liability. (Doc. 2, ¶ 12.) Even a brief survey of cases involving considerably worse conduct, reveals that the bar for alleging extreme and outrageous conduct is higher than what Plaintiff has alleged in this case. *See E.E.O.C. v. Matthews*, No. 2:92-cv-610, 1995 WL 529197 (M.D.N.C. June 26, 1995) (no extreme and outrageous conduct despite colleagues that directed multiple racial slurs toward

plaintiff that are considered to be worse than what Plaintiff alleged); *Wilson v. Southern Nat'l Bank*, 900 F. Supp. 803 (W.D.N.C. 1995) (conduct alleged by Plaintiff, including use of sexually derogatory language, not extreme and outrageous); *Stamper v. Charlotte-Mecklenburg Bd. of Educ.*, 544 S.E.2d 818 (N.C. Ct. App. 2001) (affirming summary judgment of IIED claim where plaintiff proved that an assistant principal interfered with her classroom instruction, falsified her class test scores and published the false and embarrassing scores to peers, repeatedly told plaintiff she wanted her to move to a different school, and eventually transferred her to a different school); *Smith-Price v. Charter Behavioral Health Systems*, 595 S.E.2d 778 (N.C. Ct. App. 2004) (affirming summary judgment of IIED claim where plaintiff supervised an employee who reacted poorly to her criticism, yelled at her, threatened to make accusations against her, threw a package of paper at her which hit her and filed a sexual harassment complaint against her); *Loftis v. Brown and Williamson*, 2:95-cv-143, 1996 U.S. Dist. Lexis 8255 (M.D.N.C. April 25, 1996) (no IIED claim where plaintiff alleged that co-worker (1) made a sound like an explosion by kicking a vending machine and while looking at plaintiff said "I am looking for someone to kill this morning;" (2) complained about the company and lazy employees; (3) used a racial epithet; (4) jumped and surprised plaintiff at work; and (5) pointed and laughed at plaintiff for no reason). Examining the allegations of Plaintiff's Complaint in the context of precedent, the allegations fail to state "extreme and outrageous conduct" as a matter of law. Accordingly, because Plaintiff's Complaint fails to state a claim for IIED and does not allege conduct that is extreme and outrageous, Plaintiff's claim for IIED is dismissed with prejudice.

    Plaintiff similarly fails to state a claim for NIED. Other than merely stating, "or in the alternative Negligent Infliction of Emotional Distress" in parenthesis under "FOURTH CAUSE OF ACTION" in her complaint, Plaintiff completely fails to allege the claim of negligent

infliction of emotional distress ("NIED"). Plaintiff argues that when several paragraphs in her complaint are read together, she has sufficiently pleaded a claim for NIED. Specifically, Plaintiff claims that statements alleged in paragraphs 31, 32, 39, and 40 of her complaint are sufficient to state a claim for NIED. This Court disagrees.

Paragraph 31 simply recounts alleged actions and omissions on the part of employees Eric Huff and Joseph Hawk for which Plaintiff asserts Defendants are liable for retaliation, an intentional act. Paragraph 32 discusses losses allegedly suffered by Plaintiff for retaliation. Paragraph 39, similarly deficient, addresses intentional and not negligent actions. Finally, paragraph 40 of the complaint addresses intentional retaliation under Title VII. Plaintiff cannot transform intentional conduct into negligent conduct by simply adding the words "omission" and "failure" to describe Defendants' response to the conduct alleged. In sum, Plaintiff's complaint does not recite any element of an NIED claim and therefore does not meet the pleading standard established in *Twombly*. Accordingly, Plaintiff's claim for NIED is dismissed with prejudice.

**E. Plaintiff's Claim for Negligent Retention and Supervision**

Plaintiff's Complaint alleges that Defendants negligently retained and supervised Eric Huff and Joseph Hawk and that Plaintiff's allegations are sufficient to state a claim for negligent retention and supervision.

Under North Carolina law, to succeed on a claim of negligent retention or supervision, a plaintiff must allege and prove two elements: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000) (citing *Hogan*, 340 S.E.2d at 124). After dismissal of Plaintiff's IIED claim and NIED claim, the only underlying "tort" that remains is the alleged violation of

Title VII:

(a) "Defendants supervisory and/or managerial personnel were negligent in their supervision and control of employees, in that Defendants knew or should have known of the unlawful harassment and other abusive treatment directed toward Plaintiff by Defendants' employees and agents ..." (Doc.2, ¶ 47(a));

(b) "Defendants were negligent in its [sic] continued retention of Plaintiff's supervisors (Eric Huff and Joseph Hawk), in that they knew or should have known in exercise of reasonable care, that Plaintiff's supervisors, would engage in further unlawful conduct toward Plaintiff ..." (Doc. 1, ¶47(b).)

Even when viewing the complaint in the light most favorable to Plaintiff, Plaintiff's complaint fails to state a claim for negligent retention and supervision because, as a matter of law, Plaintiff cannot rely on allegations of Title VII discrimination, harassment or retaliation as the "underlying tort" supporting a claim for negligent supervision and Plaintiff's state law tort claims for IIED and NIED do not state claims upon which relief can be granted.

Title VII discrimination, harassment, and/or retaliation cannot serve as the "underlying tort" in support of a claim for negligent retention and supervision. *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (holding that neither retaliation nor harassment are "common law torts," and therefore cannot constitute prima facie element of tortious acts" for purposes of a negligent supervision claim). Because Plaintiff's Complaint only alleges violations of Title VII as the requisite "underlying tort," Plaintiff's claim for negligent retention and supervision fails to state a claim upon which relief can be granted.

Plaintiff's claim of negligent retention and supervision cannot be based on Plaintiff's state law claims for IIED and NIED because such claims fail as a matter of law. When underlying torts that form the basis of Plaintiff's negligent supervision claim fail as a matter of law, then one of the *prima facie* elements of negligent supervision also fails. *See Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772-774 (4th Cir. 1997) (affirming dismissal of Plaintiff's

negligent retention and supervision claim because the underlying tort complained of was also dismissed).

Accordingly, because this Order dismisses Plaintiff's IIED and NIED claims, Plaintiff's negligent retention and supervision claim fails as a matter of law and is dismissed with prejudice.

**E. Plaintiff's Claim for Vicarious Liability**

Plaintiff's sixth cause of action alleges that Defendants are liable "for its agents [sic] actions," specifically the actions of "Eric Huff and Joseph Hawk." (Doc. 1, ¶¶ 52-56.) Plaintiff fails to state a claim upon which relief can be granted because vicarious liability is not a cause of action and when underlying torts fail as a matter of law, vicarious liability is of no worth.

"Vicarious liability" is not a stand-alone cause of action. It is a derivative method of assigning liability to a party. *See Black's Law Dictionary* (8th Ed. 2004) (vicarious liability is liability "that a supervising party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties"); *see also Poole v. Copland, Inc.*, 481 S.E.2d 88, 95 (N.C. Ct. App. 1997), *rev'd on other grounds*, 498 S.E.2d 602 (1998) (noting that "when an employer's liability is solely derivative under a theory of vicarious liability ... the liability of the employer cannot exceed the liability of the employee"). Therefore, because vicarious liability is merely a derivative theory of liability and not a cause of action, Plaintiff has failed to state a claim upon which relief can be granted and her claim for vicarious liability is dismissed with prejudice.[1]

---

[1] This Order rejects Plaintiff's claim for vicarious liability as a stand alone cause of action. It does not, however, ultimately prevent Plaintiff from using vicarious liability as a derivative method of assigning liability at a later date.

### F. Tortious Interference with Contract

In her eighth cause of action, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's alleged employment contract by committing acts that "resulted in the constructive discharge of Ms. Bond's employment and continuous tortuous [sic] interference with Plaintiff's employment contract with Rexel, Inc." (Doc. 1, ¶ 61.) The thrust of Plaintiff's argument is that Defendants interfered with their own contract with Plaintiff.

In North Carolina, interference with contract has five elements: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988) (citing *Childress v. Abeles*, 84 S.E.2d 176, 181 (N.C. 1954), using the term "outsider" rather than "defendant" in its recitation of the elements). Importantly, the tort of interference of contract is in contemplation of and only applies to situations in which an outsider or other party not directly subject to a contract interferes with or otherwise disrupts a contract between a plaintiff and a third party.

North Carolina courts have applied the elements of tortious interference consistently with this conclusion. For example, in *Wagoner v. Elkin City Schools' Bd. of Educ.*, the North Carolina Court of Appeals affirmed summary judgment against the plaintiff with regard to two defendants by finding that "plaintiff cannot maintain an action against [the defendants] for malicious interference with contract because [the defendants] ... are parties to the contract." 440 S.E.2d 119, 124 (N.C. Ct. App. 1994); *see also Smith v. Ford Motor Co.*, 221 S.E.2d 282, 292 (N.C. 1976); *Elmore v. Atlantic Coast Line R.R. Co.*, 131 S.E. 633, 636 (N.C. 1926). As such,

15

Defendants cannot be liable for interference with their own alleged contract with Plaintiff. Plaintiff's claim for tortious interference with contract is dismissed with prejudice.

**8. Plaintiff's Sarbanes-Oxley Claim and N.C. Gen. Stat. *§* 126-84**

In her ninth cause of action, Plaintiff claims Defendants violated the whistleblower provisions of both the Sarbanes-Oxley Act ("SOX") and N.C. Gen. Stat. § 126-84 ("Statement of Policy"). However, each alleged basis for Plaintiff's whistleblower claims is fatally flawed. Plaintiff's SOX allegation fails to state a claim upon which relief can be granted because Plaintiff does not allege that she filed a SOX whistleblower complaint with the Occupational Safety and Health Administration ("OSHA") at any time prior to instituting the present action. Similarly, Plaintiff's state law basis fails to state a claim upon which relief can be granted because the statute to which Plaintiff refers, N.C. Gen. Stat. § 126-84, only applies to state employees.

Plaintiff has failed to meet the administrative procedural prerequisites necessary to filing a claim under the SOX whistleblower statute in federal court. Under the SOX statute, prior to filing in any federal court, an injured party must file a complaint with OSHA within 90 days of the alleged adverse employment action. *See* U.S.C.A. § 1514A(b)(2)(D); *see also* 29 C.F.R. § 1980.103(d). After this initial administrative filing requirement is met, the party may only file an action in district court if OSHA fails to issue a final decision within 180 days of the filing of the complaint and there is no showing that the delay was caused by the claimant in bad faith. *See* 18 U.S.C.A. § 1514A(b)(1)(B)*; see also* 29 C.F.R. § 1980.114(a). If these requirements are not met, "a federal court lacks jurisdiction to hear the claim." *Malin v. Siemens Med. Solutions Health Servs.*, 638 F. Supp. 2d 492, 496 (D. Md. 2008) (citing *Collins v. Beazer Homes USA, Inc.,* 334 F. Supp. 2d 1365, 1373 & n.5 (N.D. Ga. 2004), in which the court describes the administrative

procedural prerequisites to filing a SOX whistleblower claim in detail).

Plaintiff's Complaint fails to allege any facts suggesting that she filed a claim with OSHA within the 90-day statute of limitations period or otherwise. Plaintiff makes a statement of "non-opposition to this cause of action..." Accordingly, Plaintiff's claim under the SOX whistleblower statute fails as a matter of law and is dismissed with prejudice.

Plaintiff's state law whistleblower claim brought under N.C. Gen. Stat. § 126-84 also fails as a matter of law. The state whistleblower statute in question states, in pertinent part, "it is the policy of this State that State employees be free from intimidation or harassment when reporting to public bodies about matters of public concern ..." N.C Gen. Stat. § 126-84(b). Thus, even to cross the threshold of alleging a claim under § 126-84, Plaintiff must be a State employee. Plaintiff has made no allegations in her Complaint that she ever was a State employee while allegedly working for Defendants. Defendants are private corporations and therefore Plaintiff could never have been a state employee while allegedly employed by Defendants. As a result, Plaintiff's complaint under N.C Gen. Stat. § 126-84 fails as a matter of law and is therefore dismissed with prejudice.

The Court is mindful that it had to analyze for purposes of this Order several claims raised by Plaintiff that were not even close. To use a vernacular expression, counsel is advised, for the future, not to "throw claims against the wall to see if they stick." An absence of passable arguments is a disservice to counsel for both sides and their respective clients, who are entitled to expect that each claim pleaded will have a plausible basis in law and fact.

## IV. CONCLUSION

For the reasons stated herein, this Court will allow Plaintiff to amend the Summons and Complaint to substitute "Branch Group, Inc., d/b/a Rexel Electrical and Datacom," for "Rexel Electrical and Datacom." As a result, this Court rejects Defendants' argument that Plaintiff's Title VII claim fails because Plaintiff's Complaint does not name her employer. As such, Plaintiff's Title VII claim survives Defendants' Motion to Dismiss. The following claims, however, are **dismissed with prejudice**: (1) Plaintiff's claims for retaliation under N.C. Gen. Stat. § 95-241 (REDA); (2) Plaintiff's claim for IIED, or in the alternative, NIED; (3) Plaintiff's claim for negligent retention and supervision; (4) Plaintiff's claim for vicarious liability; (5) Plaintiff's claim for tortious interference with contract; (6) and Plaintiff's claim for Sarbanes-Oxley Act/Whistleblowing and N.C. Gen . Stat. § 126-84.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's Motion to Amend the Summons and Complaint (Doc. 14) is **GRANTED.**

(2) Defendants' Partial Motion to Dismiss Plaintiff's Complaint (Doc. 8) is **GRANTED IN PART AND DENIED IN PART.**

Signed: April 26, 2011

Richard L. Voorhees
United States District Judge